UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-60130-CIV-ALTONAGA/Seltzer

RONALD J. CAPTAIN and
SHARON P. CAPTAIN,

    Plaintiffs,
v.

BANK OF AMERICA, N.A.,

    Defendant.
_____/

# ORDER

**THIS CAUSE** came before the Court on Defendant, Bank of America, N.A.'s Motion for Summary Final Judgment [ECF No. 58], submitted with its Statement of Undisputed Material Facts ("Def.'s Facts") [ECF No. 59] on September 5, 2018. On September 19, 2018, Plaintiffs, Ronald J. Captain and Sharon P. Captain, filed their Response [ECF No. 67] and a Response to Defendant's Facts ("Pls.' Resp. to Def.'s Facts") [ECF No. 68], to which Defendant filed a Reply [ECF No. 69]. The Court has carefully considered the parties' submissions, their exhibits, the record, and applicable law. For the reasons that follow, the Motion is granted.

## I. BACKGROUND

This is an action for fraud against a former loan servicer of a foreclosed home. In 2004, Plaintiffs executed a $270,000 promissory note in favor of lender, Countrywide Home Loans, Inc., and secured this debt with a mortgage on their home in Broward County, Florida. (*See* Def.'s Facts ¶¶ 1–2). Defendant serviced the loan. (*See id.* ¶ 3).

Four years later, Plaintiffs informed Defendant they had fallen behind on their mortgage payments. (*See id.* ¶¶ 7–8). Plaintiffs then contacted Defendant to request a HAMP (the "Home

Affordable Modification Program") loan modification. (*See* Declaration of Sharon Captain (the "Captain Decl.") [ECF No. 68-1] ¶ 4).

Defendant, as one of the nation's largest mortgage servicers, is required to use "reasonable efforts to "effectuate any modification of a mortgage loan under [HAMP]." (Complaint [ECF No. 1] ¶ 12 (quoting Servicer Participation Agreement [ECF No. 1-3] § 2(A) (alteration added)). Once approved for a HAMP loan modification, a homeowner begins a three-month trial payment period, during which the homeowner makes mortgage payments under the loan modification. (*See* Compl. ¶ 14). If the homeowner makes timely payments during this period, the homeowner is entitled to a permanent loan modification, with the terms during the trial payment period extended for five years. (*See id.*).

In early June 2009, Plaintiffs executed a HAMP Loan Workout Plan. (*See* Bank of America's Affidavit ("Def.'s Aff.") [ECF No. 59-1] ¶ 13). Shortly thereafter, Defendant told Plaintiffs they were "approved" for a HAMP loan modification. (Captain Decl. ¶ 6). Based on that representation, Plaintiffs started making trial payments. (*See id.*). While Plaintiffs were pursuing a HAMP loan modification, foreclosure proceedings were instituted against them in the Seventeenth Judicial Circuit in and for Broward County. (*See* Def.'s Facts ¶ 9; *see also* Foreclosure Action Docket [ECF No. 59-2]).

In August 2009, two months after the foreclosure action was filed, Defendant informed Plaintiffs their HAMP application documents were "not received." (Captain Decl. ¶ 5). In fact, Defendant told Plaintiffs it had not received Plaintiffs' documents numerous times, even though Plaintiffs had submitted their applications and supporting documents at least five times. (*See id.*; *see also* Pls.' Resp. to Def.'s Facts ¶ 12).

Four years later, Plaintiffs filed their Answer and Affirmative Defenses to the foreclosure action. (*See* Def.'s Facts ¶ 18). The state court eventually entered a Consent Final Judgment of Foreclosure in February 2014. (*See id*. ¶ 21). The foreclosure sale took place a few months later. (*See* Captain Decl. ¶ 12).

Plaintiffs then brought this action against Defendant (*see* Compl.) stating one claim of fraud (*see id.* ¶¶ 84–89). Plaintiffs assert Defendant falsely informed them their HAMP applications were not received or were incomplete for the "purpose of frustrating the HAMP application process to ensure a modification was ultimately declined." (*Id*. ¶¶ 43–44, 76). Plaintiffs suffered damages, including (1) the costs of and time spent sending and resending their HAMP application (*see id*. ¶ 45); (2) trial period payments made to Defendant (*see id.* ¶¶ 50–51, 53, 59); (3) damages equal to the amount in equity of their home (*see id.* ¶ 53); and (4) improperly charged property inspection fees from 2007 to 2014 (*see id.* ¶¶ 55–56).[1]

Defendant moves for summary judgment.[2] (*See generally* Mot.). Defendant contends the *Rooker-Feldman* doctrine[3] deprives the Court of subject matter jurisdiction over Plaintiffs'

---

[1] As to the merits of Plaintiffs' fraud claim, Defendant asserts Plaintiffs failed to timely make their trial period payments and thus were not entitled to a HAMP loan modification. (*See* Def.'s Aff. ¶¶ 16–17). Plaintiffs dispute Defendant's assertion, insisting they timely made each of the trial period payments. (*See* Captain Decl. ¶ 6).

[2] Plaintiffs assert the Motion should be denied as premature because there has been inadequate time for discovery. (*See* Resp. 25). The Court disagrees. First, Defendant's Motion is ripe because Plaintiffs have not shown they "cannot present facts essential to justify [their] opposition" to Defendant's Motion. Fed. R. Civ. P. 56(d) (alteration added). More importantly, the deadline to complete discovery was August 13, 2018 (*see* Order Setting Trial [ECF No. 10]), although when the Court granted in part a Joint Motion to Extend Discovery Deadlines and Trial Schedule [ECF No. 39] the parties were reminded they could take discovery beyond the deadline by agreement (*see* July 27, 2018 Order [ECF No. 40] 3).

[3] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

claim. (*See id.* 6–12).[4]

## II. LEGAL STANDARD

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At summary judgment, the moving party bears the initial burden of identifying "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations and internal quotation marks omitted)). If "the moving party fails to demonstrate the absence of a genuine issue of material fact, the motion should be denied." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (citations omitted).

## III. ANALYSIS

The *Rooker-Feldman* doctrine "is intended to prevent the federal courts from hearing what are essentially appeals from state court decisions, which may only be heard by the United States Supreme Court." *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1284

---

[4] Defendant also argues Plaintiffs' claim is barred by Florida's four-year statute of limitations (*see* Mot. 12–15) and Florida's compulsory counterclaim rule (see *id.* 16–17), and that Plaintiffs failed to satisfy an express condition precedent to bringing this action (*see id.* 17–19). Because Plaintiffs' action is barred by *Rooker-Feldman*, the Court does not address Defendant's other arguments.

(11th Cir. 2018). The doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 1285 (quoting *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

An "important limitation" of *Rooker-Feldman* is that the doctrine applies "only where the plaintiff had a reasonable opportunity to raise his federal claim in state proceedings." *Wood v. Orange Cty.*, 715 F.2d 1543, 1547 (11th Cir. 1983) (alteration added). Certainly if "the plaintiff has had no such opportunity, he cannot fairly be said to have 'failed' to raise the issue." *Id.*

Defendant insists the Court should apply the *Rooker-Feldman* inquiry because Plaintiffs had a "reasonable opportunity" to bring their fraud claim in state court. (*See* Mot. 11–12). By doing so, Defendant asserts *Rooker-Feldman* will compel the Court to dismiss this action for lack of subject matter jurisdiction. (*See id.* 6–10). The Court first addresses whether the *Rooker-Feldman* inquiry applies to the facts of this case. Concluding that it does, the Court then addresses whether *Rooker-Feldman* bars Plaintiffs' action.

### A. Whether Plaintiffs had a Reasonable Opportunity to Raise their Fraud Claim in the Foreclosure Action

Again, the Court will engage in the *Rooker-Feldman* inquiry unless Plaintiffs had "no 'reasonable opportunity to raise'" their fraud claim during the foreclosure action. *Target Media Partners*, 881 F.3d at 1286 (quoting *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996)). In construing this "important limitation" on *Rooker-Feldman*, the Eleventh Circuit has instructed courts to look to whether a plaintiff actually had an opportunity during the state court proceeding to raise the claim later brought in federal court. *See Wood v. Orange Cty.*, 715 F.2d 1543, 1547–48 (11th Cir. 1983). In *Times v. Wilson*, the court made the following pertinent observation

about the limitation on the *Rooker-Feldman* doctrine, equally applicable here:

> The plaintiffs in *Wood v. Orange County* were prevented from entering a timely appeal because the court found that the plaintiffs had no actual notice of the judgment and because they could not be imputed with constructive knowledge of a judgment entered pursuant to *ex parte* proceeding of which they had no actual notice. The court thus found that the plaintiffs had no knowledge of the judgment until after the time for filing an appeal had passed, and consequently, had no reasonable opportunity to have their claims of error heard by an appropriate court . . . . Here, however, Plaintiff has not been faced with, for instance a judgment rendered as a result of an *ex parte* proceeding which would preclude a timely, reasonable opportunity for review by an appropriate appeals court. Rather, Plaintiff had a reasonable opportunity for her claims to be heard . . . .

*Times v. Wilson*, No. 2:13-CV-564-WKW, 2014 WL 1153720, at *7 (M.D. Ala. Mar. 20, 2014) (alterations added; citing *Wood v. Orange Cty.*, 715 F.2d at 1548); *see also Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1334 (11th Cir. 2001) (concluding "the plaintiffs had a reasonable opportunity to bring their . . . challenges" in state court where the "plaintiffs were both parties to the state court proceeding . . . and were present and participated in the state court proceedings." (alterations added)).

Most recently, the Eleventh Circuit reiterated its pronouncement in *Wood* that "*Rooker-Feldman* is not a bar to jurisdiction where '[an] issue did not figure, and could not reasonably have figured, in the state court's decision.'" *Target Media Partners*, 881 F.3d at 1286 (quoting *Wood*, 715 F.2d at 1547; alteration in original) (holding that an "allegedly tortious act occurring long after the state court rendered its judgment cannot be barred by *Rooker-Feldman* because there was no opportunity to complain about the allegedly injurious act in the state court proceedings.")).

Unlike the plaintiffs in *Wood* and *Target Media Partners*, Plaintiffs had the opportunity to raise their fraud claim in the foreclosure action. Plaintiffs' fraud claim, a state law claim routinely resolved in state courts, arose before the foreclosure judgment was entered. *See Cherry*

6

*v. Ventures Tr. 2013-I-NH by MCM Capital Partners LLC*, No. 15-24133-CIV, 2016 WL 6538447, at *4 (S.D. Fla. Feb. 26, 2016) (applying *Rooker-Feldman* inquiry where the plaintiffs had a "reasonable opportunity" to raise their fraud claims in the state court foreclosure proceeding but chose not to). Because Plaintiffs were parties to the foreclosure, fully participated in the foreclosure action, and could have raised their theory of fraud in state court, Plaintiffs had a reasonable opportunity to raise their fraud claim. *See Merice v. Wells Fargo Bank, N.A.*, No. 15-80614-CIV, 2016 WL 1170838, at *4 n.4 (S.D. Fla. Mar. 25, 2016) (rejecting the plaintiff's argument that he was not given a reasonable opportunity to raise his claim in state court where he "was a party in the state case and did not file a motion for reconsideration, an appeal of the foreclosure, or an objection to the sale") (citations omitted)); *see also Smedley v. City of Ozark*, No. 1:13-CV-304-WKW, 2013 WL 3237694, at *3 (M.D. Ala. June 25, 2013) ("Plaintiff would not have been precluded from asserting . . . claims in the trial court or on appeal. Thus, Plaintiff did have a 'reasonable opportunity' to raise his federal claims in the state court proceedings . . . . [T]he *Rooker-Feldman* jurisdictional bar [therefore] applies . . . ." (alterations added)).

The parties' briefing, however, touches on a nuanced construction of the *Rooker-Feldman* limitation which some district courts have adopted: whether Plaintiffs had actual or constructive notice o*f the specific basis of their claim* during the state court action. *See Plevin v. U.S. Bank Nat'l Assoc.*, No. 6:15-cv-412-Orl, 2016 WL 368990, at *2 (M.D. Fla. Feb. 1, 2016) (noting that if the plaintiff "was on notice of the basis of his claims during the state court proceeding and could have legally asserted those claims as part of the previous proceeding, he had a 'reasonable opportunity' to do so." (citations omitted)).

Within this framework, Defendant contends the Court should apply *Rooker-Feldman* to

7

the undisputed material facts of this case because Plaintiffs "had a reasonable opportunity to challenge what they now characterize as fraudulent charges and . . . omissions that were added to their foreclosure judgment." (Mot. 12 (alteration added)). Defendant submits Plaintiffs must necessarily have had an opportunity to bring their fraud claim given they "challenge[d] several of these [HAMP] charges when they moved to dismiss the foreclosure complaint" and pled a theory of fraud against the foreclosure, albeit not the same theory of fraud asserted in this action. (*Id.* (alterations added); *see also* Reply 3–4)). Defendant points to Plaintiffs having challenged charges related to Plaintiffs' HAMP Loan Workout Plan in the foreclosure action. (*See* Mot. 12). Defendant also notes Plaintiffs were represented by counsel in the foreclosure action. (*See* Reply 3).

Plaintiffs disagree and maintain that *Rooker-Feldman* does not apply to their fraud claim because at the time of the foreclosure, "they had no actual or constructive knowledge of fraud." (Resp. 8). As to actual knowledge, Plaintiffs assert they did not learn about Defendant's fraud in the HAMP modification process until they retained their present attorneys in December 2016. (*See id.*; *see also* Captain Decl. ¶¶ 8–11). As to constructive knowledge, Plaintiffs state they had no reason to know about the basis of the fraud claim and insist their arguments about Defendant's fraudulent behavior in the foreclosure action are different from the allegations here, where Plaintiffs specifically allege fraud in the HAMP loan modification process. (*See* Resp. 9).

The Court must again agree with Defendant. The Court accepts as true Plaintiffs' assertion they did not learn that Defendant committed fraud in the HAMP loan modification process until after they retained their present attorneys in December 2016. (*See* Resp. 8; *see also* Captain Decl. ¶¶ 8–11). That Plaintiffs did not actually know about the fraud in the HAMP loan modification process until they retained their present attorneys, however, is not dispositive. *See*

*Zuluaga v. Bank of Am., N.A.*, No. 8:17-cv-2543-T-33TGW, 2018 WL 5014552, at *4 (M.D. Fla. Oct. 16, 2018) ("The Court would reach the same conclusion [that *Rooker-Feldman* bars the plaintiff's suit] even if Plaintiff was unaware of the fraud at the time of the foreclosure." (alteration added; citation omitted)).

Instead, the Court looks to whether Plaintiffs *should have known* of the basis of their fraud claim during the foreclosure action. Plaintiffs offer evidence that actually corroborates Defendant's assertion they were on constructive notice of the fraud claim in the foreclosure action. Defendant's misrepresentations were made in June and August 2009, years before Plaintiffs filed their Answer in the foreclosure action in December 2013. (*See* Captain Decl. ¶¶ 5–6; *see also* Def.'s Facts ¶ 18). In 2009, Defendant informed Plaintiffs they were "approved" for HAMP; two months later, and repeatedly thereafter, Defendant told Plaintiffs their application materials were "not received," even though Plaintiffs sent their application at least five times and made three timely trial payments. (Captain Decl. ¶¶ 5–6; *see also* Pls.' Resp. to Def.'s Facts ¶ 12). At a minimum, these events should have alerted Plaintiffs during the foreclosure action that there existed a fraud claim based on the irregularities with the HAMP loan modification process. *See Dale v. Moore*, 121 F.3d 624, 627 (11th Cir. 1997) (per curiam) (holding the plaintiff had a reasonable opportunity to raise his claims in the state court action because he had "notice" of the basis of the claim).

As Defendant notes, Plaintiffs' filings in the foreclosure action further illustrate Plaintiffs should have known about the basis of their fraud claim in state court. Tellingly, Plaintiffs *did* raise a theory of fraud there. (*See* Answer and Affirmative Defenses to Foreclosure Complaint [ECF No. 59-5] ¶¶ 39–58)). Although Plaintiffs' theory of fraud in the foreclosure action was not identical to the fraud claim asserted here (*see id.*), Plaintiffs were certainly aware the trial

payments they made in their HAMP Loan Workout Plan could serve as a basis to dismiss the foreclosure action. (*See* Motion to Dismiss Complaint [ECF No. 59–3] ¶ 3). Significantly, Plaintiffs were represented by counsel. (*See* Final Judgment of Foreclosure [ECF No. 59-7] 3).

While Plaintiffs are correct that none of these filings show Plaintiffs actually knew about the basis of their fraud claim in the HAMP loan modification process until December 2016 (*see* Resp. 9), they do bolster the conclusion that Plaintiffs should have known about the basis of their fraud claim during the foreclosure action. *See Harper v. Chase Manhattan Bank*, 138 F. App'x 130, 133 (11th Cir. 2005) (affirming dismissal of case under the *Rooker-Feldman* doctrine because the plaintiff "could have raised her . . . claims in state court, and in fact, she indicate[d] she raised similar claims in opposition to the motion for summary judgment for foreclosure." (alterations added; footnote call number omitted)).

Given Plaintiffs were on notice of the basis of their fraud claim in state court, they had a reasonable opportunity to raise the claim during the foreclosure action. Accordingly, the *Rooker-Feldman* inquiry applies to the facts of this case. *See Higdon v. Tusan*, No. 17-11127, 2018 WL 3868672, at *1 (11th Cir. Aug. 14, 2018) (noting "application of the *Rooker-Feldman* doctrine" is a "question[] of law") (alteration added; citations omitted)).

    **B.**    **Whether Plaintiffs' Fraud Claim is Inextricably Intertwined with the Foreclosure Action**

Because the Court agrees with Defendant that a *Rooker-Feldman* inquiry is warranted, the Court next considers whether *Rooker-Feldman* bars Plaintiffs' fraud claim. To determine whether a claim is barred by *Rooker-Feldman*, the Eleventh Circuit considers whether it was either "(1) one actually adjudicated by a state court or (2) 'inextricably intertwined' with a state court judgment." *Target Media Partners*, 881 F.3d at 1286 (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam)). It is undisputed the fraud claim was not actually

adjudicated by the state court. A claim is inextricably intertwined if "it asks to 'effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues.'" *Id*. (quoting *Casale*, 558 F.3d at 1260)).

Defendant argues the fraud claim is inextricably intertwined with the foreclosure action. (*See* Mot. 8–10). According to Defendant, for Plaintiffs to prevail on the merits of their fraud claim here, they will have to show Defendant's fraudulent statements caused the foreclosure. (*See id*. 9). Defendant also notes Plaintiffs seek damages flowing from the foreclosure judgment and sale. (*See id*. 10). Plaintiffs insist this action is independent of the foreclosure action and that awarding them damages for their fraud claim would leave the state court judgment intact. (*See* Resp. 9–20).

The Court agrees with Defendant — the fraud claim is inextricably intertwined with the state court judgment. The Eleventh Circuit's decision in *Nivia v. Nation Star Mortgage, LLC* is instructive on this point. *See* 620 F. App'x 822 (11th Cir. 2015). There, the Eleventh Circuit expounded on the *Rooker-Feldman* inquiry:

> The *Rooker-Feldman* inquiry is not whether a claim for damages is based to any degree on harm resulting from a valid state court judgment . . . . The inquiry is whether either the damages award would annul the effect of the state court judgment or the state court's adoption of the legal theory supporting the award would have produced a different result.

*Id*. at 825 (alteration added; citing *Casale*, 558 F.3d at 1260). The Eleventh Circuit applied the inextricably-intertwined analysis to the plaintiffs' Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA") claim, which was based on the defendant-lenders' alleged failure to help plaintiffs modify their loan, causing plaintiffs to lose their home during foreclosure. *See id*. The court held *Rooker-Feldman* barred the FDUTPA claim because the claim effectively amounted to an equitable defense to the foreclosure, and the adoption of that theory would have produced a

11

different result in state court. *See id.* (citation omitted).

Just like the plaintiffs' FDUTPA claim in *Nivia*, Plaintiffs' fraud claim amounts to an equitable defense to the foreclosure action. Had Plaintiffs raised and the state court adopted Plaintiffs' theory that Defendant's fraudulent scheme caused Plaintiffs to default on their loan, the foreclosure would have been deemed "legally invalid." *Id.* (citation omitted); *see also Najera v. NationsBank Tr. Co., N.A.*, 707 So. 2d 1153, 1155 (Fla. 5th DCA 1998) ("If th[e] alleged course of fraudulent conduct . . . is established at trial, and if it is shown was reasonably relied upon by the [plaintiff homeowners], these proofs could provide them with a defense to this foreclosure action." (alterations added)). Plaintiffs' fraud claim is thus barred by *Rooker-Feldman*.[5]

Moreover, Plaintiffs' alleged damages are all intertwined with the foreclosure judgment. Plaintiffs' principal injury is "the loss of [Plaintiffs'] home and the equity in that home, as well as the loss of future equity in their home" (Compl. ¶¶ 53, 62 (alteration added)), resulting from the foreclosure. To award this remedy, the Court would "effectively nullify the state court judgment" and necessarily hold "that the state court wrongly decided the issues." *Casale*, 558 F.3d at 1260 (internal quotation marks and citations omitted). This, the Court cannot do. *See Figueroa v. MERSCORP, Inc.*, 477 F. App'x 558, 560 (11th Cir. 2012) (holding the foreclosure judgment was intertwined with the injury in the federal action — the "one-half interest in his

---

[5] In *Nivia*, the Eleventh Circuit also held the *Rooker-Feldman* doctrine did not bar the plaintiffs' HAMP claim. *See Nivia*, 620 F. App'x at 824–25. In *Nivia*, the plaintiffs' HAMP claim arose under the HAMP and involved a lender's noncompliance with its duties under the HAMP. *See id.* The Court reasoned such procedural noncompliance could not "invalidate[] [the] foreclosure resulting from that failure as a matter of law." *Id.* at 825 (alterations added). In contrast, as explained in detail above, the success of Plaintiffs' fraud claim "would require a determination that the state court entered the judgment wrongly . . . ." *Id.* (internal quotation marks and citation omitted; alteration added); *see also Martinez v. Bank of Am., N.A.*, No. 8:17-cv-2596, 2018 WL 5024178, at *3 (M.D. Fla. Oct. 17, 2018) ("*Nivia* supports the application of the *Rooker-Feldman* doctrine to this fraud case" and does "not stand for the proposition that any claims related to the issuance of HAMP modifications are not barred by the *Rooker-Feldman* doctrine.").

property and home" stemming from the "improper foreclosure proceeding." (citation and footnote call number omitted)).

Plaintiffs' damages in the form of the costs of and time spent resending their HAMP application (*see* Compl. ¶ 45), Plaintiffs' trial payments (*see id*. ¶ 53), and improperly charged property inspection fees (*see id*. ¶ 55), fare no better. These damages, too, are inextricably intertwined with the foreclosure judgment. *See Williams v. Dovenmuehle Mortg. Inc.*, No. 17-60191-CIV, 2017 WL 4303841, at *5–6 (S.D. Fla. June 16, 2017) (barring the plaintiffs' claim for damages, including the costs of sending loss mitigation applications and fees assessed to mortgage loan account under *Rooker-Feldman*).

The Court is not persuaded by Plaintiffs' assertion that *Rooker-Feldman* only applies to claims for injunctive or declaratory relief, and not claims for damages. (*See* Resp. 11–12 (citing *Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669 (11th Cir. 2014)). In *Arthur*, the plaintiffs sought "money damages for alleged criminal and fraudulent conduct in the *generation* of foreclosure-related documents." *Id.* at 675 (emphasis in original). The Eleventh Circuit held *Rooker-Feldman* did not bar the plaintiffs' suit because the plaintiffs' "alleged injuries flow . . . from the generation of the foreclosure documents and not solely from the issuance of the state court judgment" and "[i]nstead of seeking to nullify the state court judgment, the [plaintiffs] are seeking to bypass any findings in the state court judgment that would be adverse to them in this suit." *Id.* (alterations added; citations omitted).

The fraud claim here does not involve any purported misconduct by Defendant *during* the foreclosure action; rather, Plaintiffs allege Defendant's actions *before* the foreclosure action caused Plaintiffs to default on their loan, resulting in the foreclosure. (*See generally* Compl.). Unlike with the plaintiffs' injuries in *Arthur*, any damages award to Plaintiffs would thus

"effectively nullify the state court judgment." *Casale*, 558 F.3d at 1260 (internal quotation marks and citation omitted).

In sum, through their fraud claim and the damages they seek, Plaintiffs "complain exclusively about a misrepresentation that preceded — and ultimately caused — the foreclosure," which is an "attempt to impugn the validity of the foreclosure judgment." *Varela-Pietri v. Bank of Am., N.A.*, No. 8:17-CV-2534, 2018 WL 4208002, at *3 (M.D. Fla. Sept. 4, 2018) (footnote call number omitted). Plaintiffs' suit is thus barred by *Rooker-Feldman*.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant, Bank of America N.A.'s Motion for Summary Final Judgment [**ECF No. 58**] is **GRANTED**.

2. Plaintiffs' Motion for Leave to Amend Complaint **[ECF No. 92]** to add claims for punitive damages and negligent misrepresentation is **DENIED**. Plaintiffs do not satisfy their burden for leave to amend under Federal Rule of Civil Procedure 15(a)(2) because "the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cornelius v. Bank of Am., N.A.*, 585 F. App'x 996, 1000 (11th Cir. 2014) (per curiam) (internal quotation marks and citation omitted). Plaintiffs' new proposed claims (*see* Proposed Amended Complaint [ECF No. 92-1]), like their fraud claim, relate to Defendant's alleged conduct before the foreclosure action, which caused Plaintiffs to default on their loan and resulted in the foreclosure. Because *Rooker-Feldman* deprives the Court of subject matter jurisdiction over those claims, granting

Plaintiffs' motion to file their amended complaint would be an exercise in futility. *See, e.g.*, *Fenn v. U.S. Bank Nat'l Ass'n*, No. 6:16-cv-769-Orl, 2016 WL 4942055, at *4 (M.D. Fla. Aug. 23, 2016) (denying the plaintiff's motion for leave to amend because "the [c]ourt lacks subject matter jurisdiction over this case pursuant to the *Rooker-Feldman* doctrine, and leave to file a second amended complaint would be futile." (alteration added; citation omitted)).

3. All other pending Motions **[ECF Nos. 82, 83, 101]** are **DENIED as moot.** The October 29, 2018 Hearing **[ECF No. 84]** is therefore **CANCELLED**.

4. Final judgment will be entered by separate order. The Clerk of Court is instructed to **CLOSE** the case.

**DONE AND ORDERED** in Miami, Florida, this 25th day of October, 2018.

*[signature]*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:　　counsel of record